And our fourth case this morning is number 17-1253 Mejia-Galindo v. Sessions. Mr. Lewis. May it please the court. John Lewis for the petitioner Carlos Mejia-Galindo. Mejia-Galindo asked the court to grant the petition for review in order that the removal proceedings below be terminated. In this case, the government seeks to remove petitioner from the United States based on his convictions for possession of drug paraphernalia under Kentucky law. As the Supreme Court recently explained in Malooly v. Lynch, to trigger removal, the government must connect an element of his conviction to a drug controlled under federal law. I think you'll have to address jurisdiction first. I expected that I might, Your Honor. So, beginning with the jurisdictional point. We understand the government to have conceded that even if the board has the power to enter orders of removal in the first instance, the board erred in doing so here. We would go a step further and say that the board lacks the authority to enter an order of removal at all as multiple courts of appeals have held. However, that order does not deprive the court of appeals of jurisdiction for several reasons. 8 U.S.C. 1252 conditions the jurisdiction of the court of appeals on the existence of a final order of removal. And there's no question that the board purported to enter a final order of removal in this case. The board issued a legal document purporting to order petitioner's removal from the country. And even if that order was procedurally defective in the sense that the board arrogated authority from the immigration judge, that procedural defect does not deprive the court of jurisdiction. Well, it's more than a procedural defect. The board didn't have any authority to enter a removal order in the first instance. And that, it seems to me, leaves us with nothing to review. We would dispute that. It's different from the Guevara case? This is certainly different from the Guevara case. In the Guevara case, this court held that if the immigration judge makes an initial finding of removability but grants relief from removal, that's an order of removal that the board can reinstate. Right, because the right judicial officer is making the ruling. That's right, Your Honor. Your Honor is certainly right that this is more than an ordinary procedural defect. At the same time, the condition for jurisdiction specified by Section 1252 is still present. There is an order of removal, albeit an unlawful one. And we would also point out that the Supreme Court has frequently held that a defect in the agency's jurisdiction, meaning that the agency has exceeded its authority under the statute, does not deprive the court of appeals of jurisdiction to consider the substance of the order. And the court has frequently gone on to consider the merits of what the agency has done. If the petitioner had not challenged this order, he surely would have been deported. That's exactly right, Your Honor. There's no question that if a petitioner had done nothing, he would have been deported from the country. So the position that the government is putting noncitizens like petitioner in is really quite troubling. A petitioner is forced to take a jurisdictionally improper appeal to the court of appeals so that the court vacates the order of removal. Then the petitioner has to go back to the board, gets remanded back to the immigration judge, has to pursue a pointless appeal to the board because the board has decided the substantive legal question, and then has to pursue another petition for review to the court of appeals. Well, there would be opportunities on remand all the way through to the immigration judge to pursue various forms of relief from removal. That's right, Your Honor. Before the immigration judge, our client could certainly seek various forms of relief from removal. However, we think that the removability question is likely to be the dispositive legal question in this appeal. There are also several other reasons why we think that the court has jurisdiction here. As we point out in our briefs, there are a number of provisions of the Immigration and Nationality Act that are based on the existence of a final order of removal. And if my colleague on the other side is correct, and there is no final order of removal here, then none of those provisions of the statute would be operable. The statute's prescription on reentering the country within a certain period of time would no longer be live. And similarly, the statute's provisions, which bar evasion of a final order of removal, would also not operate if this order is, in fact, not a final order of removal. And so for these reasons— Why don't you talk about Swaby v. Yates, the First Circuit 2017 case? Yes, Your Honor. So turning to the merits, we think Swaby v. Yates is a particularly important case where the First Circuit has adopted virtually the identical position to that we're urging here. In Swaby v. Yates, the court held that there was per se a realistic probability that a statute will be used to prosecute non-generic conduct if the statute expressly lists and highlights non-generic conduct as being worthy of criminal penalties. And that's exactly the case here. The Kentucky statute at issue unquestionably criminalizes three substances that are not found on the federal statutes. And so we argue the court should follow the First Circuit in holding that there is per se a realistic probability that the statute would be applied to such substances. And that result, moreover, is consistent with the very nature of the categorical approach. The Supreme Court in its decisions elucidating the categorical approach since Taylor has emphasized that the categorical approach focuses on the statutory elements of the conviction, the way the state statute lays out the elements of the state offense. And in many of its cases applying the categorical approach, the court has not looked for examples where the state statute has been applied to non-generic conduct in holding that the state statute is overbroad. That was the case in DeCamps, where the court considered the California burglary statute and whether it encompassed entering a building to burglarize it with lawful purposes, as is the case with the shoplifter. That was the case in Johnson, which considered whether Florida's battery statute encompassed mere offensive touching. And that was the case in Mathis, where the court considered Iowa's burglary statute and whether that encompassed the burglary of a vehicle. Why isn't this controlled by Moncrief and Meluli, as the BIA determined? Well, we certainly think that the case is controlled by Meluli. I think you may be referring to Moncrief and Duenas-Alvarez, which is the two Supreme Court cases that the board drew its realistic probability analysis from. Those cases, as this court put it in the Maxwell case, are concerned with fanciful hypotheticals about the reach of the state statute, where the petitioner or the defendant comes up with an out-there interpretation of the state statute's language to cause it to reach non-generic conduct. That's very different from what we have here. There's no legal imagination necessary to conclude that the state statute reaches non-generic conduct. We know that the state statute does, because it expressly tells us so. It lists numerous substances for criminal penalties that the federal statute does not. Moncrief didn't involve fanciful hypotheticals. It involved a misdemeanor versus a felony marijuana conviction, did it not? You're right that Moncrief is a bit different than Duenas-Alvarez in the sense that the petitioner in Moncrief didn't argue some wacky interpretation of the state statute. The conduct clearly fell within the state statute, but Moncrief is different for another reason. The federal statute at issue in Moncrief made it a removable felony to traffic in marijuana, but created a misdemeanor carve-out for trafficking of marijuana in small amounts without remuneration. The state statute included the same general prohibition, but lacked the carve-out that the federal statute had. And we think that's a meaningfully different circumstance from what we have here. A state might decline to include such a carve-out for any number of reasons. In fact, if it thinks that the conduct is unlikely to be prosecuted, it may see no reason to include such a carve-out at all. But it's a different matter entirely when the state takes the additional step of specifically naming and highlighting non-generic conduct within its statute. When the state takes that additional step, we think that's a powerful signal that the state, in fact, intends to prosecute such conduct. So I'd like to turn now to some of the reasons why this approach makes good sense, i.e. not requiring petitioners in every case not to come forward with sample prosecutions. The Supreme Court has emphasized in its decisions laying out the categorical approach that the categorical approach is meant to reduce the burden on the parties and the courts, and also to ensure consistency between petitioners in different states. And each of these concerns would be frustrated by applying the Board's broad understanding of the realistic probability analysis. Well, I'm not sure about that. It just perpetuates the sort of fortuity of non-applicability of the Immigration Code based on anomalies in state law. I mean, this is sort of anomalous that we have these three prohibited substances in a paraphernalia law that is aimed at something that's far more intuitive in the drug trade. So this would be something that anyone looking at this without the overlay of a lot of technicalities as unwarranted break for your client that departs from the norm around the country rather than conforms to the norm or perpetuates consistency. We certainly recognize that concern, Your Honor. In any case, it may be fairly clear that, as is the case here, the petitioner engaged in the sort of conduct that the federal statute prescribes, but because of some anomaly in the way the state statute is crafted, the categorical approach doesn't count as to their convictions. But it's important to recognize that that's a choice that both Congress and the Supreme Court have made among the various risks. Congress, in using the term conviction in the statute, has emphasized that the courts aren't supposed to look to the facts of the underlying offense. They're only supposed to look to what the conviction necessarily established. And so in many of the court's cases applying the categorical approach, it's been fairly clear that the petitioner or the defendant engaged in precisely the generic conduct that Congress sought to criminalize. But that's nonetheless the way the categorical approach plays out. And there are a number of ways the state can seek to avoid these sorts of anomalies from causing problems. The state can tie its schedules to the federal schedules by making them change whenever the federal statute changes, or the state can simply draft a divisible statute that creates different crimes with different penalties for the conduct. States don't craft criminal laws with federal immigration policy in mind. That's just an unrealistic argument that states can get around this by thinking about how the federal immigration laws apply. That's not a state concern. It's certainly true that states don't set out to draft their criminal statutes while thinking about the possibility of federal immigration consequences. But if, as Your Honor points out, there were some anomaly where somebody who clearly committed generic conduct escaped federal consequences for their crime, then that might prompt the state to react. But as I see my time's going into rebuttal, I would just make one other point, which is that even if the court disagrees with us that there's a realistic probability, per se, if a state statute encompasses the non-generic conduct, the petitioner has clearly presented numerous prosecutions of non-federally controlled substances under Kentucky law. Specifically, petitioner has shown that Kentucky prosecutes offenses involving tramadol and carisaprodol. And petitioner has also presented cases from other jurisdictions that have prosecuted nalbethine, which shows that nalbethine is not the kind of drug that's just fallen out of use. But this is a drug paraphernalia case, right? That's right, Your Honor. And the cases that we cite in our briefs involve other drug offenses, such as trafficking and possession. But we don't interpret the Supreme Court as having required that the prosecutions involve the precise statute and the precise circumstances that the petitioner's offense involved. Because the fact that Kentucky prosecutes other crimes involving these particular drugs shows that these are not drugs that realistically never pop up out in the field, that the state has no interest in prosecuting. It's simply a mere happenstance that the court hasn't prosecuted any cases involving paraphernalia relating to those substances up to the appellate courts. And it's worth noting that drug paraphernalia convictions under Kentucky law are Class A misdemeanors. There's simply no reason why a defendant would pursue that case all the way up to the Kentucky Supreme Court or to the point where those opinions would pop up in the Westlaw or the case reporters. So in many cases, a noncitizen may have to trawl through the state's paper dockets or whatever electronic dockets it has to find convictions for these substances. They're normally punished with a fine? Right, Your Honor, or some small amount of jail time, but certainly not the sort of jail time that would prompt somebody to pursue a lengthy appeal. So unless the court has further questions, I would reserve the balance of my time for rebuttal. Thank you. Thank you. May it please the court. This case should be remanded back to the agency because we have, at a minimum, a problematic final order in this case. At a minimum. What would have happened if the petitioner had not appealed the board's order? Would the government have treated it as a final order of removal? Probably so. Just as an administrative matter, they would have done so. Because it really looks like a final order of removal to me. But the petitioner would have had opportunities to, for example, if this is not a final order, there are other avenues the petitioner would have had to have contested it. Say he was removed. He could have sued the government in some other capacity to say I did not have a final order, you improperly removed me, and seek appropriate damages or declaratory relief. Now, help me with this. What good could possibly be gained by remanding? The BIA will remand to the IJ to order, to enter an order of removal. The petitioner will then appeal to the board. The board has already revealed its decision on the merits. So it will deny the appeal and affirm the order of removal. And then you will all be back in front of the three of us a year or two from now. I will be older. The petitioner will be detained in the meantime, even though on the merits there is an on-point case from the Supreme Court of the United States that seems to require a ruling in favor of the petitioner. I just don't see where we could get. OK. Let me break this down into separate issues. First, if this goes back to the agency and it goes back to the immigration judge, there will be further hearings. Presumably he has asked for relief. There will be further hearings regarding relief. When it is appealed to the board, the petitioner is completely free to raise any of the arguments that he's raising here, some of them for the first time, before the board with regard to removability again. He's not precluded from doing that. He can do that once more. And then if the board does find him removable, does not find him eligible for relief, and it comes back here and we finally got a fully baked case, we can address all of the issues, not just a sliver in some semi-interlocutory order. So for that reason, the government... Will you admit that on the merits this is a simple reverse? Your Honor, I don't believe it is a simple reverse on the merits. Oh, my. One, I don't believe it. Malooly does not require a different result in this case. In fact, Malooly itself carved out in a footnote an exception saying, this case does not pretend to address the application of the categorical approach as it was described in, or as it was promulgated in Madera-Ferreira. So the approach that the board did take here is not one that the court has previously, or the Supreme Court has previously opined on. In fact, the Supreme Court ostensibly and quite plainly left that alone. Well, circumstances in Malooly are identical in all relevant respects to what happened here. You are correct, Your Honor. In Malooly, the individual was convicted of Adderall in a sock, basically. It was a paraphernalia offense like the offense here. The difference here and from Malooly is that the government in Malooly was arguing something different, and that was that the phrase relating to in the controlled substance removability ground referred to the statute and allowed any kind of criminal offense that somehow related to a controlled substance, just broadly conceived, to be a removable offense. And the Supreme Court said, no, that's not the case. You have to apply the same approach that the government applies in possession cases. That is, you have to attempt to connect the controlled substance in the paraphernalia ground of removability to a controlled substance on the federal schedules. It did not say that you cannot apply the realistic probability test in those circumstances. Look, this is not an ambiguous State statute. I can't possibly understand how, under the categorical approach, these positions, these convictions could ever be used to support removability. I'm at a loss, I can tell you that, to your position. Going back to the issue of the final order in this case, although the government believes it has put forward reasons to conclude that 1101A47A and B do not require that this be treated as a final order. I mean, require, yes, allow for the board to enter a final order in this sort of circumstance. The government's perfectly aware and understands if this court wants to go ahead and go along with the other five circuits out there that have found that this is not a final order and have also found that, as a result, they lack jurisdiction to address the appeal. And even if not, even if there is another reason, even if the final order is problematic for other grounds, for instance, here we have the board finding the individual hadn't sought relief when the immigration judge, in this case, hadn't delved in, had yet to delve into it, that we don't have a fully cooked case. And for one reason or other, if it's jurisdictional on the one side, or just an error by the board not to provide a final order in this case, this court should either, you know, should remand it back to the agency for further proceedings. If there are no further questions, the government rests. Thank you. Thank you, Governor. Thank you. I said thank you, government. Thank you very, very much. I appreciate it. Mr. Lewis, you have one minute left. The government isn't making a very robust attempt to reconcile Malouli and Moncrief and the realistic possibility cases with the outcome in Malouli? Right, Your Honor. I think there's actually a fairly simple way to reconcile Moncrief and Malouli. Moncrief and Duenas-Alvarez, the case that preceded it, are concerned with imaginatory out-there interpretations of the state statute. But as was the case in Malouli and as is the case here, there's no imagination required to hold that the state statute encompasses non-generic conduct. The statute tells us on its face that it does. And those earlier cases also arose in the context and at a time when the Supreme Court was grappling with the limits of the generic crime doctrine. We now have a more fully formed body of case law from the Supreme Court on what the categorical approach entails. Right, Your Honor. I think the court has emphasized since those cases that the categorical approach focuses on the statute and that the court isn't to disregard the plain meaning of the statute in favor of this review of the state, its prosecutorial practices. Well, we also have a stronger overbreath principle in light of Dekamp and Mathis and others that if the state statute is overbroad, there's a presumption that it's not generic. That's certainly true as well, Your Honor, that we have to presume that the conviction rested on nothing more than the least of the acts criminalized and not as the realistic probability analysis would seem to imply the most of what the state statute criminalizes. So we would ask the court to grant the petition for review, hold that the petitioner's convictions are not removable offenses, and order that the removal proceedings be terminated. All right. Our thanks to both counsel. The case is taken under advisement.